# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Younis Mohammed Al Jayab<br>Samer Mohammed Al Jayab<br>Ahmed Waleed Mahmood<br><br>*Defendant(s)* | Case No. 15-M-073 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __9/1/2014 - 2/16/2015__ in the county of __Milwaukee__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy. |
| 18 U.S.C. § 2314 | Interstate transportation of stolen property. |
| 18 U.S.C. § 2315 | Receipt of stolen property. |
| 18 U.S.C. § 21 | Definition of stolen property. |
| 18 U.S.C. § 2 | Aiding and abetting. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Eric Fraser, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Jan 6, 2016

*Judge's signature*

City and state: Milwaukee, Wisconsin    David E. Jones, U.S. Magistrate Judge
*Printed name and title*

I, Eric Fraser, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of the issuance of a complaint pursuant to Federal Rule of Criminal Procedure 3. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since 2008. I have worked full-time as a Federal law enforcement officer for the past 7 years. I am involved in investigations of subjects receiving stolen property with the intention of selling such stolen goods, not only in the City of Milwaukee and the State of Wisconsin, but also in other countries.

2. As a federal law enforcement officer, I have participated in the investigation of criminal offenses, resulting in the prosecution and conviction of individuals and the seizure of weapons, stolen property, United States currency, and other evidence of criminal activity. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by criminals who conspire to buy, sell, and transport stolen property. I have participated in all aspects of criminal investigations, including physical surveillance, execution of search warrants, undercover transactions, consensually monitored conversations, analysis of phone and financial records, and arrests of criminal subjects. I have been the affiant on search and arrest warrants. I have also spoken on numerous occasions with other experienced investigators concerning the methods and practices of criminal subjects who conspire to buy, sell, and transport stolen property and launderer the proceeds. Furthermore, I have attended training courses which specialized in the investigation of criminal violations and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by criminal subjects to

1

buy, sell, and transport stolen property, and to collect and launder criminally-derived proceeds. I am further aware of the methods employed by criminal subjects to thwart any investigation of their illegal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case and surveillance agents. These agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 Sections 2314 and 2315 (transportation and sale/receipt of stolen goods), and 371 (conspiracy), have been committed, by YOUNIS MOHAMMED AL JAYAB (YOUNIS), SAMER MOHAMMED AL JAYAB (SAMER), and AHMED WALEED MAHMOOD (MAHMOOD). SAMER is the younger brother of YOUNIS and MAHMOOD is their cousin.

## PROBABLE CAUSE

5. In May 2014 a reliable confidential source (CS) reported to the FBI that YOUNIS was involved in the sale and receipt of stolen merchandise in the City and County of Milwaukee, Wisconsin, with the intent of selling and shipping said merchandise overseas for a profit.

6. On September 17, 2014, FBI surveillance agents confirmed that YOUNIS was working at 27th St. Tobacco in Milwaukee, WI. An FBI Undercover Employee (UCE) (herein referred to as

2

UCE-1) drove to the 27th St. Tobacco store wearing consensual audio and video recording devices. UCE-1 entered the store and offered to sell YOUNIS two Samsung Galaxy cellular telephones. UCE-1 advised YOUNIS that the phones were stolen. YOUNIS expressed interest in purchasing the phones as long as the price was right. YOUNIS inspected the phones and attempted to place his personal SIM card into the phone in order to activate it, but YOUNIS was unsuccessful. YOUNIS stated that he would purchase the phones if they were GSM standard unlocked cellular telephones. Your affiant knows through training and experience that GSM stands for "Global System for Mobile" communications and is the network standard for much of the world. A GSM unlocked phone can operate overseas without further modification other than the insertion of any Subscriber Identity Module (SIM) card. If the phone is not GSM, the phones will not operate. Of the four major U.S. cellular carriers, only T-Mobile and AT&T wireless use GSM technology. UCE-1 told YOUNIS that he would return the following Friday with GSM unlocked phones. YOUNIS provided UCE-1 with his cellular telephone number of 916-595-4341 to set up a future meet to purchase the stolen phones. All subsequent telephone communications between YOUNIS and UCE-1 were recorded.

7. On September 19, 2014, case agents observed YOUNIS working at the 27th St. Tobacco store in Milwaukee, WI. UCE-1 drove to the 27th St. Tobacco store, and while utilizing a consensual audio and video recording device, entered the store and offered two new Apple iPhones and one new Apple MacBook Pro (laptop) to YOUNIS. YOUNIS ensured the phones were operational and agreed to purchase them for $150 each. YOUNIS did not have $400 for the laptop and proceeded to negotiate with UCE-1 to purchase this item for $200.

8. YOUNIS purchased the three aforementioned items for $500 total. The total retail price for these new items is $2,531.22. YOUNIS requested UCE-1 to provide 10 Apple iPhones at a

3

later date and stated he would get his money in order. YOUNIS stated that he knew this activity was illegal (buying "stolen" phones) and that he sells the stolen phones overseas. The affiant knows through training and experience that iPhones are not as available in some overseas locations and therefore command a higher purchase price.

9. On September 26, 2014, UCE-1 had a consensually monitored telephone call with YOUNIS to discuss the purchase of stolen phones. YOUNIS sought to purchase 10 Apple iPhones for $1,000. During the conversation, UCE-1 informed YOUNIS that he and his cousin had been stealing merchandise off delivery trucks in Chicago, IL, for years. UCE-1 asked YOUNIS "who the boss is up there?" YOUNIS replied, "me and my cousin, he put the money with me so we can buy ten." UCE-1 asked if they wanted something other than just phones, such as televisions. YOUNIS replied, "I need a television for my house, come on, hook me up...a flat screen...like 50-52 inch."

10. On September 28, 2014, YOUNIS telephonically contacted UCE-1 from telephone number of 414-522-3817, informing UCE-1 that this was his new number and requested UCE-1 not to contact him again on 916-595-4341. UCE-1 told YOUNIS that his cousin needed to know what to steal off the truck. YOUNIS requested ten (10) Apple iPhones and two laptop computers. YOUNIS reminded UCE-1 that the phones had to be GSM unlocked. YOUNIS also spoke with UCE-1 about getting a television off the truck for his personal use. YOUNIS stated to UCE-1: "Remember, this is illegal. You do not know me and I don't know you. You get your money and I'll get mine".

11. On September 30, 2014, U.S. Customs and Border Protection (CBP) intercepted a package with sender information, YOUNIS M. AL JAYAB, 3039 East Grange Ave. Apt. #1,

4

Cudahy, WI, contact telephone number 916-595-4341. I know this to be YOUNIS's address because it is the same address listed on his Wisconsin driver's license. The package was addressed to an individual in Romania. Upon inspection, CPB found that the package contained a Galaxy Samsung S4, Model SCH-I545. There was no memory or SIM card contained within the phone, but the registered phone number was 916-571-4377, known to be SAMER's phone number.

12. On October 5, 2014, UCE-1 made telephonic contact with YOUNIS at 414-522-3817. YOUNIS confirmed that UCE-1 had the 10 Apple iPhones, and instructed UCE-1 to meet him at the Wal-Mart located at 222 N. Chicago Avenue, South Milwaukee, WI. At that location, case agents observed SAMER and MAHMOOD walking in the Wal-Mart parking lot towards the store entrance. Shortly thereafter, YOUNIS, SAMER and MAHMOOD approached UCE-1's undercover vehicle. UCE-1 was wearing a consensual audio and video recording device.

13. Case agents observed YOUNIS shake hands with UCE-1 at the rear of the undercover vehicle. SAMER was observed walking away and then was observed driving a red Dodge Caravan, bearing WI plate 430VSP through the Wal-Mart parking lot. SAMER parked the vehicle next to UCE-1's vehicle where UCE-1 was meeting with YOUNIS and MAHMOOD. UCE-1 told them that the items he was selling were stolen. MAHMOOD stated five of the 10 Apple iPhones being sold were going to him. YOUNIS stated he chose to meet at this parking lot because it did not have video surveillance. YOUNIS and MAHMOOD purchased the 10 new Apple iPhones from UCE-1 for a price of $1,000. The retail price for these new items was $5,797.40. Thereafter, YOUNIS and MAHMOOD, along with an object suspected to contain the newly purchased phones, were observed entering the red Dodge Caravan, bearing WI plate 430VSP. The vehicle departed the area and drove directly from the Wal-Mart to YOUNIS'

5

residence at 3039 E. Grange Ave, Cudahy, WI. YOUNIS, MAHMOOD, and SAMER were observed entering the residence.

14. On October 7, 2014, surveillance agents observed YOUNIS driving a gray 2007 Pontiac Grand Am to an express mail facility located in Oak Creek, WI. YOUNIS was observed carrying a package into the building. Surveillance agents overheard YOUNIS inquire about shipping a package internationally. YOUNIS departed the store with three small shipping boxes and returned to his vehicle.

15. Case agents also learned that YOUNIS visited another express mail facility located at 5375 South 3rd Street, Milwaukee, WI, on October 7, 2014. Case agents interviewed the mail clerk who assisted YOUNIS on this date. The clerk stated that YOUNIS attempted to ship two Samsung Galaxy cell phones to Romania and one Apple iPhone to Cyprus. A glitch in the mail facility's system, and YOUNIS's handwritten labels, prevented the packages from being sent on this date. YOUNIS told the clerk that he had shipped a package to Romania a few weeks earlier with no problems. After waiting approximately 40 minutes, YOUNIS exited the store with his packages. The clerk explained that while at the facility, YOUNIS talked to an unidentified individual on his cellular telephone about the shipment. A review of the store's surveillance video verified YOUNIS's presence at the express mail facility.

16. On October 7, 2014, CBP conducted an inquiry for any outbound international shipments by YOUNIS (per 19 U.S.C. § 1583 – Examination of Outbound Mail). According to that inquiry, YOUNIS sent: 1) on 5/28/2014, an "HTC ONE" (cell phone) valued at $100.00 to ALI TWFEEK in Cyprus; 2) on 7/1/2014, "phones" valued at $500.00 to ALI TWEEK in Cyprus; 3)

6

on 9/9/2014, "phone, nickels, ring, and watch" to ANDREEA TIMEA KOVACS in Romania; 4) on 9/30/2014, "phone" valued at $75.00 to ANDREEA KOVACS in Romania.

17. On November 6, 2014, UCE-1 spoke telephonically with YOUNIS regarding the purchase of Apple iPhones and televisions. UCE-1 told YOUNIS that he could not make the trip to Wisconsin at this time. However, UCE-1's cousin (UCE-2) would deliver the phones. YOUNIS was hesitant, but agreed to meet UCE-1's cousin at the Wal-Mart at 222 N. Chicago Avenue, South Milwaukee, WI.

18. On November 6, 2014, UCE-2 met YOUNIS and SAMER in the Wal-Mart parking lot and sold them 10 new Apple iPhones and a new 60" Sony flat screen television for $1,250.00. The retail price for the 10 new phones was $5,797.40, and $1,583.99 for the new television. UCE-2 helped YOUNIS and SAMER load the television into a green Pontiac Sunfire, temporary WI license plate L1085E. SAMER took a black shoulder bag which contained the ten phones from UCE-2 and placed the bag into the rear seat of the Pontiac Sunfire. YOUNIS and UCE-2 exchanged telephone numbers before departing. YOUNIS drove the Pontiac Sunfire with SAMER as passenger away from the Wal-Mart parking lot and directly to their residence at 3039 E. Grange Avenue, Cudahy, WI. SAMER carried the black shoulder bag with the phones, and YOUNIS carried the television, into the residence.

19. On November 7, 2014, UCE-2 received multiple text messages from YOUNIS, stating "I sold the merchandise already. When you think you can get some more?"

20. On December 9, 2014, surveillance agents observed YOUNIS travel to the South Milwaukee Post Office and mail a small parcel. After learning the package was bound for international shipment, the USPIS and CBP located the package. A review of the shipping label

7

listed the recipient as ANDREEA KOVACS in Romania. The package contained the following items: one white Apple iPhone with gold accents (model number A1533), phone accessories, and jewelry. Additional review of the phone, upon turning it on, indicated that phone number was 916-595-4341, with ESN of F17N656FFFDQ and model number ME298LL/A. This was determined to be one of the Apple iPhones purchased by YOUNIS and SAMER from UCE-2 on November 6, 2014. YOUNIS' phone number was associated with this phone because he likely inserted his own SIM card into the phone to ensure it was operational.

21. By previous arrangement, on February 16, 2015, UCE-2 met SAMER at the Wal-Mart parking lot at 222 N. Chicago Avenue, South Milwaukee, WI. UCE-2 offered to sell and SAMER agreed to purchase five new Apple iPhones for $100.00 each. UCE-2 informed SAMER that he had five additional new Apple iPhones available for purchase. In the presence of UCE-2, SAMER telephonically contacted YOUNIS about the additional phones. Thereafter, SAMER paid UCE-2 $500.00 for the original five phones and departed the parking lot in a blue 2002 Toyota Celica, bearing WI license plate 236VRU and registered to YOUNIS. Surveillance agents observed SAMER meet with YOUNIS several blocks from the Wal-Mart. SAMER returned to the Wal-Mart parking lot and paid UCE-2 an additional $500.00 for the five additional Apple iPhones. The retail price of these 10 new phones was $5,797.40.

22. In summary, UCE-1 and UCE-2 sold 32 new Apple iPhones, a new laptop computer, and a new television, with a total retail value of $21,507.41, to YOUNIS, SAMER, and MAHMOOD, who knowingly purchased the items believing they were stolen in Chicago, IL and transported to Milwaukee, WI.